J. B. PUMPHREY V. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY.

Decided November 4, 1896.

**1.  Evidence—Declarations of Third Parties.**

On the issue of whether plaintiff's cattle were properly treated while unloaded and held at stock pens by reason of a strike, evidence that other shippers, whose cattle were held at the same place, expressed satisfaction with the treatment was irrelevant.

**2.  Charge of Court—Facts Not in Evidence.**

Where there was no evidence in the record to show that the place where cattle were delayed in transit was a division terminus it was error to charge the jury as to what delay might be excusable at such terminus.

**3.  Same.**

See evidence under which such error could not be held harmless.

APPEAL from the County Court of Williamson County.  Tried below before Hon. D. S. CHESSER.

*J. W. Parker*, for appellant.—The proof conclusively showed that the strike did not commence, taking the earliest time fixed by any witness, until 7 or 8 o'clock a. m., and that plaintiff's cattle reached Baring Cross at 6:05 o'clock a. m., and no explanation was given or attempted why the cattle were held at Baring Cross during the time intervening between 6:05 o'clock a. m. and 7 or 8 o'clock a. m.  Railway v. McCorquodale, 71 Texas, 46.

There was no actual resistance offered to the progress of plaintiff's cattle upon their arrival at Baring Cross, and so far as anything appears to the contrary, and as a fact, they could have been continued right along upon their reaching Baring Cross, as was plaintiff's intention they should be.

The damages claimed by plaintiff for ill treatment of his cattle while detained at Baring Cross by reason of the muddy condition of the pens and the failure of appellee to provide the cattle with proper food and water, he was entitled to recover, even conceding appellee was excusable for the delay, and the declarations of the other persons in charge of cattle in the pens at Baring Cross during the strike of their satisfaction with the way their cattle were treated were clearly inadmissible, because not competent to bind plaintiff, there being no privity between them and plaintiff.  2 Wharton, Evidence (2nd ed.), secs. 1192, 1193, 1199.

The court erred in giving defendants' special instruction number five. There was no evidence tending to show that Baring Cross was the end of a division, at which crews and engines were to be changed, switching done and trains made up.  Railway v. Wisenor, 66 Texas, 675; Railway v. Birchfield, 33 S. W. Rep., 1023; Railway v. Gilmore, 62 Texas, 391.

*Fisher & Townes, Fiset & Miller,* for appellee.—When plaintiff's cattle arrived at Baring Cross they were delayed there from July 1st to July 10th by reason of a strike among the employes of the defendant, and during such time the defendant was unable, by its own efforts and with the assistance of the civil and military authorities, to send the same forward to destination.  This, in law, excuses the delay.  Railway v. Levi, 76 Texas, 337; Railway v. Gatewood, 79 Texas, 89; Geismer v. Railway, 102 N. Y., 563; Railway v. Hazen, 84 Ill., 36; Railway v. Hollowell, 65 Ind., 188; Railway v. Bennett, 6 Am. & Eng. Cas., 391.

There was evidence to the effect that Baring Cross terminated the run of some of the trainmen in the train containing plaintiff's cattle, and that at that place others would take charge of the train, and the testimony was explicit to the effect that the striking employes not only refused to work themselves, but by their acts and threats prevented others from taking their places and the trains from being moved.

The court did not err, as alleged in appellant's seventh assignment of error.  The testimony was that all the parties in charge of the stock detained at Baring Cross during the strike expressed to the officers and employes of the defendant at Baring Cross, before the stock were finally shipped out, their satisfaction at the treatment the cattle had received while there detained.  The testimony did not identify by name the parties expressing satisfaction, and the jury were at liberty to determine, from the evidence before them, whether Ed. Brooks, in charge of plaintiff's cattle, was among them, notwithstanding his statement to the

effect that he was not.  It cannot be said that the testimony shows that the declarations of satisfaction were not made by Ed. Brooks as well as by the other persons.

COLLARD, Associate Justice.—This is a suit brought by J. B. Pumphrey against the St. Louis, Iron Mountain and Southern Railway Company for damages resulting to ninety-six head of beef cattle shipped by plaintiff to East St. Louis for market, caused by delay and ill-treatment of the cattle while detained in the pens of defendant at Argenta or Baring Cross station.  The cattle were detained, as alleged, at Argenta ten days, during which time they decreased in weight and depreciated in value.

Defendant below defended the delay upon the ground that there was a strike of its employes at Argenta, who would not continue their employment, and who, by force and riotous measures, prevented other persons employed to handle the train from doing so, whereby the company could not be held liable for the delay; and the company also alleged that the cattle were well treated, watered and fed by it while in the pens during the delay.

Plaintiff declared that the cattle were placed in pens where the mud was knee deep and were neglected by failure of the company to furnish them with suitable provender and water, causing the injury for which the suit was brought.  Plaintiff adduced testimony sustaining these averments, and defendant also offered testimony showing that the cattle were well and sufficiently provided with good pens and suitable and sufficient food and water while necessarily delayed by the strike.

Plaintiff also contended that he had a contract for through shipment, that the cars were provided with racks for hay and appliances for furnishing water, and that the cattle should have been shipped on and could have been shipped on to market without stopping at Argenta, in Arkansas, before the strike occurred, and that defendant was warned of the approaching strike in time, but stopped and unloaded the cattle at that point when it was unnecessary, and thus delayed the prompt movement of the stock train until the strike became operative and prevented such movement.  The testimony is conflicting on this point.

There was a verdict and judgment for the defendant, from which the plaintiff has appealed.

*Opinion.*—One Ed. Brooks was in charge of plaintiff's cattle en route. The same train carried other cattle of other owners, and they were all detained at Argenta with plaintiff's cattle and kept in the same pens, other persons being in charge of them for the owners.

These other persons, it seems, called upon W. J. Watson, defendant's stock yards foreman at Argenta, and refused to sign the live-stock report he had prepared for them, but declared that they had no fault to find with the treatment of their cattle at Baring Cross (Argenta), and they all expressed their thanks to him for the manner in which their

cattle had been treated by the company while in the pens. This was before their departure from Baring Cross. Ed. Brooks, in charge of plaintiff's cattle, testified that he did not so express himself as to the treatment of his cattle.

Plaintiff objected to the proof of such declarations by persons other than Ed. Brooks, because their declarations would not bind plaintiff. The court overruled the objection, and admitted the testimony, plaintiff reserving an exception, and now presents the point by assignment of error.

Clearly the testimony was not admissible. Defendant might have shown the fact that plaintiff's cattle were properly cared for, if it could, by the testimony of such other persons, but not by Watson that they had made these declarations to him. There was no joint interest of the other persons or their employers with plaintiff in his cattle, nor were they parties to the suit or in any sense in privity with plaintiff in respect to the matter in dispute. 1 Greenl., Ev., sec. 174 and note; 2 Wharton, Ev., sec. 1192, 1193 and 1199. Admissions, to be admissible in evidence, must be made by a party in interest or his agent charged with the management of the enterprise, or, at least, by a party to the record.

The appellant assigns as erroneous the following special charge asked by defendant below and given by the court: "If from the evidence the jury believe that, along the line of defendant's road over which these cattle were to pass to the point of destination, Baring Cross was the end of a division at which crews and engines were to be changed, switching done and trains made up, then you are instructed that the defendant had the right to consume a reasonable time within which to change its crews and make up its trains; and if, from the evidence, you believe that, about the time of the arrival of these cattle at Baring Cross, or within a reasonable thereafter, a strike among the employes of defendant intervened, of such magnitude as to prevent the movement of trains by the defendant, by the exercise of all reasonable and proper effort on its part, then you are instructed that it was the duty of the defendant to unload and care for plaintiff's cattle at such point."

The objection urged to this charge by appellant is that there was no testimony showing that Baring Cross was the end of a division of defendant's road where crews had to be changed, and therefore nothing to base the charge upon.

We have examined the statment of facts, and find that there was no such testimony that Baring Cross was a division terminus of the road where crews and engines had to be changed. The charge was erroneous, as claimed by appellant. Without testimony to the fact, the court should not submit a charge upon it. No such issue was raised by the testimony. Railway v. Faber, 63 Texas, 344; Railway v. Wisenor, 66 Texas, 674.

Appellant contends that the train might have gone on from Baring Cross and had ample time to do so before the strike took place; that it

arrived at 6:05 a. m. on July 1st, and there was no strike at least until
7 a. m. of the same day, and he contends that there is no testimony
showing that the strike intervened sooner after the arrival of the train.

There is ample evidence in support of this contention, and that the
train might well have proceeded on from Baring Cross towards its desti-
nation before the strike occurred, and that there was no necessity to
unload at Baring Cross, the cars being equipped with appliances to feed
and water the stock. We cannot say, however, that the testimony indis-
putably shows that the cars could have moved right on after their ar-
rival before the strike intervened to prevent it. The particular facts as
to the very time of arrival and the time the strike commenced are all
according to plaintiff's contention, while the disputing facts are mere
statements in a general way—that at no time after the arrival of the
train could it have been moved on because of the strike, without stating
the exact time in question. The issue as to whether the train could
have gone on at once was sharply made by plaintiff's testimony. The
court's charge in question admitted an excuse for the delay about which
there was no testimony. It can not be held to have been material. It
was reversible error.

Except the errors pointed out in the foregoing, we find no reversible
error assigned. But because of such errors the judgment of the lower
court is reversed and the cause remanded.

*Reversed and remanded.*